# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH HARRINGTON, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:16-cv-10133-LTS |
| Plaintiff, | ) ) | Hon. Leo T. Sorokin |
| v. | ) ) | **ORAL ARGUMENT REQUESTED** |
| TETRAPHASE PHARMACEUTICALS INC., GUY MACDONALD, JOHN CRAIG THOMPSON, and DAVID LUBNER, | ) ) ) ) | |
| Defendants. | ) ) ) | |
| DAN SCHLAPKOHL, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:16-cv-10577 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TETRAPHASE PHARMACEUTICALS INC., GUY MACDONALD, JOHN CRAIG THOMPSON, and DAVID LUBNER, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF NEWVANA
VENTURES LIMITED'S MOTION FOR: (1) CONSOLIDATION OF ALL RELATED
ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF ITS
SELECTION OF LEVI & KORSINSKY LLP AS LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

    I.    NEWVANA IS A TYPICAL INVESTOR, WHICH HELD A NET LONG POSITION IN TETRAPHASE SECURITIES DURING THE CLASS PERIOD ............................... 3

    II.   PLYMOUTH IS NOT ENTITLED TO ANY DISCOVERY ........................................... 9

CONCLUSION ...................................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andrada v. Atherogenics, Inc., et. al.,*
   No. 05 Civ. 00061(RJH), 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) ...................................... 4

*Ark. Teacher Ret. Sys. v. Insulet Corp.,*
   No. 15-12345-MLW, 2016 U.S. Dist. LEXIS 43501 (D. Mass. Mar. 31, 2016) ......... 2, 7, 8, 10

*Aronson v. McKesson HOBC, Inc.,*
   79 F. Supp. 2d 1146, 1999 U.S. Dist. LEXIS 19276, Fed. Sec. L. Rep. (CCH) P90,694
   (N.D. Cal. 1999) ...................................................................................................................... 7

*Brown v. Biogen IDEC Inc.,*
   No. 1:05-cv-10400-WGY (D. Mass. July 26, 2005) ............................................................... 10

*Brown v. China Integrated Energy, Inc.,*
   2011 U.S. Dist. LEXIS 151131 (C.D. Cal. 2011) ..................................................................... 3

*Carson v. Clarent Corp.,*
   No. C 01-03361 CRB, 2001 WL 1782712 (N.D. Cal. Dec. 14, 2001) ...................................... 9

*Collier v. Moduslink Global Solutions, Inc. et al.,*
   No. 1:12-cv-11044-DJC (D. Mass. Nov. 13, 2012) ................................................................... 8

*Deutschman v. Beneficial Corp,*
   132 F.R.D. 359 (D. Del. 1990) ............................................................................................ 4, 5

*Ferrari v. Impath, Inc.,*
   No. 03-Civ.-5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004) ................ 9

*Hall v. Medicis Pharm. Corp.,*
   No. CV-08-1821-PHX-GMS, 2009 U.S. Dist. LEXIS 24093 (D. Ariz. 2009) ............. 4, 5, 6, 7

*Hodges v. Immersion Corp.,*
   No. C-09-4073 MMC, 2009 U.S. Dist. LEXIS 122565 (N.D. Cal. Dec. 21, 2009) .................. 9

*In re Catalina Mktg. Corp. Secs. Litig.,*
   225 F.R.D. 684 (M.D. Fla. 2003) .............................................................................................. 3

*In re Cendant Corp. Litig.,*
   264 F.3d 201 (3d Cir. 2001) ............................................................................................... 2, 10

*In re Donkenny Inc. Sec. Litig.,*
   171 F.R.D. 156 (S.D.N.Y. 1997) .............................................................................................. 4

*In re IMAX Sec. Litig.,*
   272 F.R.D. 138 (SD.N.Y. 2010) ............................................................................................... 4

*In re Kit Digital, Inc. Sec. Litig.*,
   293 F.R.D. 441 (S.D.N.Y. 2013) ................................................................ 9

*In re MGM Mirage Secs. Litig.*,
   2010 U.S. Dist. LEXIS 120061 (D. Nev. 2010) ........................................ 3

*In re Michaels Stores, Inc. Sec. Litig.*,
   No. 3:03-cv-00246-M (N.D. Tex. July 10, 2003) .................................... 10

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
   No. 09-md-02063-JLK-KMT, 2009 WL 4016635 (D. Colo. Nov. 18, 2009) ........................... 9

*In re Priceline.com Inc. Sec. Litig.*,
   236 F.R.D. 89 ....................................................................................... 3, 5

*In re Sepracor Inc. Sec. Litig.*,
   233 F.R.D. 52 (D. Mass. 2005) .................................................................. 3

*In re SLM Corp. Sec. Litig.*,
   No. No. 08-CIV-1029 (WHP), 2012 U.S. Dist. LEXIS 8158 (S.D.N.Y. Jan. 24, 2012) ........... 3

*In re Tronox, Inc.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ............................................................... 9

*Leech v. Brooks Automation, Inc.*,
   No. 06-11068-RWZ, 2006 U.S. Dist. LEXIS 90153 (D. Mass. Dec. 13, 2006) ................. 4

*Maliarov v. Eros Int'l PLC*,
   No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5, 2016) .............. 3

*Margolis v. Caterpillar, Inc., G.A.*,
   815 F. Supp. 1150 (C.D. Ill. 1991) ........................................................... 4

*Moskowitz v. Lopp*,
   128 F.R.D. 624 (E.D. Pa. 1989) ................................................................. 5

*Prefontaine v. Research in Motion Ltd.*,
   2012 U.S. Dist. LEXIS 4238 (S.D.N.Y. 2012) ........................................... 3

*Reimer v. Ambac Fin. Grp., Inc.*,
   No. 08 Civ. 411 (NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ....................... 9

*Weikel v. Tower Semiconductor, Ltd.*,
   183 F.R.D. 377 (D.N.J. 1998) ............................................................... 4, 6

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) ............................................................. 10

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
    No. 14-CV-8925 (KMW), 2015 U.S. Dist. LEXIS 36409 (S.D.N.Y. Mar. 23, 2015) ............ 10

**Other Authorities**

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

## PRELIMINARY STATEMENT

Plaintiff Newvana Ventures Limited ("Newvana") respectfully submits this Reply Memorandum of Law in further support of its motion for: (1) consolidation of the Related Actions[1]; (2) appointment as Lead Plaintiff in a consolidated action pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (3) approval of its selection of Levi & Korsinsky LLP ("Levi & Korsinsky") as Lead Counsel.[2]

As previously articulated in its papers, Newvana is the "most adequate plaintiff" under the PSLRA because it: (i) incurred losses of approximately $3.5 million in connection with its transactions in Tetraphase Pharmaceuticals Inc. ("Tetraphase" or the "Company") securities; (ii) is typical of other injured Tetraphase investors that purchased Tetraphase securities at prices artificially inflated by the Company's materially false and misleading statements and/or omissions during the Class Period; and (3) is an adequate representative of the class in that it has no conflicts of interest with other class members.  On these facts, Newvana should be appointed lead plaintiff in this Action. "[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job." *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001); *see also*

---

[1] The Related Actions are *Harrington v. Tetraphase Pharmaceuticals Inc. et al*, Case No. 1:16cv10133 (filed January 28, 2016) and *Schlapkohl v. Tetraphase Pharmaceuticals Inc. et al*, Case No. 1:16cv10577 (filed March 23, 2016).

[2] There are three remaining movants for lead plaintiff: Newvana, Plymouth County Retirement System ("Plymouth") and Daryll Handell ("Handell"). Movants Dan Shalpkohl and Gustavo Rivera de la Fuente (the "Group Movants") have submitted a Notice of Non Opposition to Plymouth's motion (Dkt. Entry No. 37) and Movant Massachusetts Water Resources Authority Employees' Retirement Board has submitted a response acknowledging that it does not possess the largest financial interest among the various movants and withdrawing its motion. (Dkt. Entry No. 38).

*Ark. Teacher Ret. Sys. v. Insulet Corp*., No. 15-12345-MLW, 2016 U.S. Dist. LEXIS 43501, at

\*10-11 (D. Mass. Mar. 31, 2016) (adopting the *Cendant* court's approach to the evaluation of

competing lead plaintiff movants).

　　As discussed further below, neither of the two opposing lead plaintiff movants, Plymouth

and Handell, have offered any "proof" that Newvana will not adequately represent the interests of

the class.  Rather, their sole argument for why Newvana should not be appointed is based on the

false accusation that Newvana is a purported "'in and out' options trader" and, thus, it will be

subject to unique defenses that will encumber the Class.[3]  An in and out trader is, by definition,

someone who buys and sells the security before any corrective disclosures.  Newvana held more

than 16,000 shares of Tetraphase common stock at the end of the Class Period.  Thus, by definition,

Newvana is not an in and out trader.  Moreover, Plymouth's argument that Newvana should be

disqualified from serving as lead plaintiff merely because it traded in options has been rejected by

this Court, as well as Plymouth's own counsel, Scott + Scott LLP ("Scott + Scott").  Indeed, courts

routinely appoint shareholders who have traded in options and have the largest financial interest

in the litigation as lead plaintiff.  This is because option traders, like purchasers of common stock

(of which Newvana is also), rely on the integrity of the market and the underlying stock.  Newvana

maintained a long position in Tetraphase securities throughout and transacted in both common

stock and options.   Accordingly, Newvana's interests are aligned with those of the Class.

　　Even discounting the losses attributed by Newvana's option holdings, Newvana still has

the largest financial interest in this litigation with losses of $534,522.61 on the 16,300 shares of

---

[3] *See* Plymouth County Retirement System's Memorandum of Law in Opposition to Competing
Motions for Appointment of Lead Plaintiff and Lead Counsel (Dkt. Entry No. 39) ("Plymouth
Oppo.") at 3-5; Plaintiff Daryll Handell's Memorandum of Law in Further Support of His Motion
And in Opposition to All Other Motions (Dkt. Entry No. 36) ("Handell Opp.") at 6.

common stock it purchased on the open market during the Class Period compared to Plymouth's claimed losses of $502,683.95.

Unable to credibly disqualify Newvana from being the most adequate lead plaintiff Plymouth seeks discovery into Newvana's "business operations."  Such discovery, which is rarely granted, requires proof that the presumptive lead plaintiff is inadequate not present here.  As discussed below, this request is unfounded sour grapes and amounts to nothing more than a fishing expedition in an attempt to disqualify Newvana.  Thus, the Court should reject Plymouth's request.

For the reasons stated in Newvana's opening motion and herein, Newvana is the presumptive most adequate lead plaintiff and its motion should be granted.

## ARGUMENT

### I.   NEWVANA IS A TYPICAL INVESTOR, WHICH HELD A NET LONG POSITION IN TETRAPHASE SECURITIES DURING THE CLASS PERIOD

Plymouth and Handell do not dispute that Newvana has the largest financial interest in this litigation and, thus, Newvana is presumptively the most adequate lead plaintiff movant.  Rather, they incorrectly argue that Newvana is a purported '"in and out options trader, subject to unique defenses"' rendering Newvana atypical.  *See* Plymouth Opp. at 3-5; Handell Opp. at 6.

By definition, "[a]n 'in and out' trader is one who bought and sold its securities ***prior*** to a curative disclosure." *Brown v. China Integrated Energy, Inc.*, No. 11-CV-02559 (MMM), 2011 U.S. Dist. LEXIS 151131, at *37 (C.D. Cal. 2011) (Emphasis added); *In re MGM Mirage Secs. Litig.*, No. 2:09-CV-01558 (GMN), 2010 U.S. Dist. LEXIS 120061, at *15 (D. Nev. 2010) (same); *In re Catalina Mktg. Corp. Secs. Litig.*, 225 F.R.D. 684, 687 (M.D. Fla. 2003) (same). *See also*, *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082, at *20 (S.D.N.Y. Apr. 5, 2016) (appointing a lead plaintiff group that incurred losses both before and after the curative disclosure on the grounds that the movants "are not subject to a complete in-and-

out trader defense") (internal citations omitted).   As demonstrated by Newvana's amended certification, Newvana retained more than 16,000 shares of Tetraphase common stock at the end of the Class Period, after the alleged September 8, 2015 curative disclosure.   Thus, Newvana is not an "in and out" trader.

Plymouth further contends that the mere fact Newvana traded options (in addition to its purchases of Tetraphase common stock) during the Class Period renders Newvana atypical. Plymouth Opp. at 2-3.   Courts, ***including this court***, have routinely appointed shareholders who traded in options as lead plaintiff.   *See, e.g.*, *In re Sepracor Inc. Sec. Litig.*, 233 F.R.D. 52, 56 (D. Mass. 2005) (appointing option trader that did not own any common stock in defendant company as class representative for class of all equity securities); *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. at 100 (appointing lead plaintiff represented by Scott + Scott, a purchaser and holder of put options and common stock); *In re SLM Corp. Sec. Litig.*, No. 08-CIV-1029 (WHP), 2012 U.S. Dist. LEXIS 8158, at *28 (S.D.N.Y. Jan. 24, 2012) ("Investors who traded in both options and common stock have repeatedly been found to be typical and adequate representatives of common stock purchasers."); *Prefontaine v. Research in Motion Ltd*., 2012 U.S. Dist. LEXIS 4238, at *8-*10 (S.D.N.Y. 2012) (appointing lead plaintiff who traded in options); *Hall v. Medicis Pharm. Corp*., No. CV-08-1821-PHX-GMS, 2009 U.S. Dist. LEXIS 24093, at *12-*15 (D. Ariz. 2009) (same); *In re Donkenny Inc. Sec. Litig*., 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (finding that options trader who also held common stock met typicality and adequacy requirements); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990) (certifying plaintiff who never purchased

common stock as typical and adequate to represent class of purchasers of both common stock and options).[4]

In support of its argument that options holders can never serve as lead plaintiffs, Plymouth makes two unavailing arguments. *First*, Plymouth wrongly argues that "there is a question" of whether Newvana directly relied on the integrity of the market in transacting in Tetraphase options during the Class Period, which could potentially result in factual issues regarding Newvana's transactions. Plymouth Opp. at 4. To the contrary, Newvana, like other purchasers of Tetraphase common stock, transacted in options in reliance on the integrity of the market and Tetraphase's stock price underlying the options. Accordingly, contrary to Plymouth's erroneous contention (Plymouth Opp. at 4), it is irrelevant that Newvana purchased Tetraphase common stock pursuant to previously sold put options that were exercised after the Class Period because Newvana's

---

[4] The cases Plymouth relies upon for the proposition that options purchasers are inadequate class representatives are easily distinguishable by one basic fact: in each of those cases, the lead plaintiff movant *only* held options and did not hold any common stock. *See Andrada v. Atherogenics, Inc., et. al.,* No. 05 Civ. 00061(RJH), 2005 WL 912359, at *1, 5 (S.D.N.Y. Apr. 19, 2005) (movant who "*only* purchased call options and not any of the underlying common stock that most putative class members purchased" atypical); *Margolis v. Caterpillar, Inc., G.A.*, 815 F. Supp. 1150, 1154, 1158 (C.D. Ill. 1991) (on class certification motion, appointing option holder that had only purchased options and had not exercised any of them to actually purchase stock, as class representative of option holders); *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998) (on class certification motion, options purchaser could not show that his options, purchased in Europe, had ever traded in an open market or had been purchased by anyone except the proposed representative, and all stock purchases made by the proposed representative were either sold prior to any corrective disclosure or were short sales); *Leech v. Brooks Automation, Inc.*, No. 06-11068-RWZ, 2006 U.S. Dist. LEXIS 90153 (D. Mass. Dec. 13, 2006) (lead plaintiff movant atypical because he acquired holdings as a grant during a negotiated acquisition by the defendant during a narrow window in the Class Period, rather than on the open market, and was sued for securities fraud); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 147-48 (SD.N.Y. 2010) (class certification motion finding proposed class representative atypical because it sold all of its interest in the defendant company before any curative disclosure). Unlike those cases, Newvana acquired *both* options and common stock during the Class Period, including over 16,300 shares of the Company's common stock that Newvana purchased on the open market and held through the end of the Class Period, and does not suffer from any other defects.

investment decision to sell the put options was made *during* the Class Period when it determined to sell them in reliance on the integrity of the market.  When the truth was revealed, Newvana suffered losses and was damaged like every other investor.

This very same argument has been rejected by numerous courts, *as well as Plymouths' own counsel*, Scott + Scott.  *See, e.g.*, *Hall*, 2009 U.S. Dist. LEXIS 24093, at *11-13 ("Option traders and other traders of securities aside from the shares of stock themselves may use the fraud-on-the-market presumption of reliance absent special circumstances compelling a different result."); *Deutschman v. Beneficial Corp*, 132 F.R.D. 359, 371 (D. Del. 1990) ("The market price of the underlying security may affect the premium at which the option holder is able to resell the option contract and the desirability of exercising the option by purchasing the shares at the strike price prior to the expiration date vis-a-vis allowing the option to expire."); *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D. Pa. 1989) (holding that plaintiff who used a variety of trading strategies, including options, could rely upon the fraud-on-the-market presumption and was an adequate class representative); *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. at 100 (finding as an adequate class representative an individual who wrote put options based on a price determined by an efficient market, thus aligning his interests with those of the class). Specifically, in *Priceline.com*, Scott + Scott argued on behalf of a lead plaintiff who traded almost exclusively in put options:

> Weiss did not exclusively purchase and hold put options, where, as the holder, he would profit only if the price of Priceline shares decreased. To the contrary, the record indicates that Weiss sold, or wrote, many put options…Weiss has testified that his practice of writing put options was founded upon the integrity of the price of the underlying shares, which, as the class alleges, was determined by an efficient market. Weiss is therefore an adequate class representative because, notwithstanding his trading in put options, because he wrote put options, his interests are aligned with those of the class and "the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price," remains intact.

*Priceline.com*, 236 F.R.D. at 100.  Moreover, Plymouth's argument ignores the fact that Newvana also purchased Tetraphase *common stock* during the Class Period in reliance on the integrity of the market.

*Second*, Plymouth contends that Newvana will be subject to unique defenses because of purported difficulties in valuing its losses on the option transactions.  Plymouth Opp. at 3-5.  As an initial matter, courts have rejected this argument because options are valued primarily based on the price of the underlying stock.  *Hall*, 2009 U.S. Dist. LEXIS 24093, at *13; *Weikel*, 183 F.R.D. at 390 ("'the value of an option contract is responsive to changes in the market price of the underlying stock").  Moreover, Newvana's loss calculation is simple and not subject to the concerns raised by Plymouth because all of Newvana's put options were exercised by the put holder during the Class Period or the 90-day look-back period.  Thus, all of Newvana's losses may be calculated based upon actual numbers and the Court need not determine the residual value of open option contracts.[5]

*Finally*, Plymouth's argument that Newvana is atypical and subject to unique defenses is undercut by the undisputed facts that Newvana: (i) maintained a net long position in Tetraphase securities during the Class Period like most other investors; (ii) also made significant purchases of Tetraphase common stock both on the open market and resulting from puts it wrote during the Class Period; and (iii) had all the put options it wrote during the Class Period exercised by the put purchasers during the Class Period or 90-day lookback period.  Thus, Newvana is like every other

---

[5] Plymouth contends that the option contracts are "difficult" to value as Plymouth could not "determine the true number of shares underlying Newvana's options transactions." Plymouth Opp. at n.3. Plymouth, however, concedes that there are "100 underlying shares of common stock" underlying one option contract. Clearly, there should be no difficulty here as "[e]xcept under special circumstances, all stock option contracts are for 100 shares of the underlying stock." Chicago Board of Options Exchange, <u>Understanding Stock Options</u>, <u>available at</u> http://www.cboe.com/learncenter/pdf/understanding.pdf.

Tetraphase investor and its interests are directly aligned with the class of Tetraphase shareholders it seeks to represent.

In any event, excluding all of Newvana's option transactions during the Class Period and any corresponding share transactions resulting from the exercise of these options, Newvana suffered a loss of $534,522.61 on the 16,300 shares of common stock it purchased on the open market during the Class Period. Thus, even on these shares alone, Newvana's losses are still larger than Plymouth's claimed losses of $502,683.95.

Neither Plymouth nor Handell has proffered any ***proof*** demonstrating that Newvana is atypical. The lead plaintiff presumption may be rebutted only upon "'***proof***' that the presumptively most adequate plaintiff" is inadequate. *Ark. Teacher Ret. Sys.*, 2016 WL 1298966, at *3 (Emphasis added); *Hall*, 2009 U.S. Dist. LEXIS 24093, at *6 (same). Contrary to Plymouth's contention, the inquiry "need not be as 'searching as the one triggered by a motion for class certification,' because the inquiry focuses solely on whether the person will be an appropriate class representative, and not whether the class may ultimately be certified." *Hall*, 2009 U.S. Dist. LEXIS, at *8 (citations omitted). As demonstrated above and in Newvana's opening brief, Newvana has made a "prima facie"[6] showing that it is the most adequate movant for lead plaintiff and Plymouth and Handell have not carried their burden to rebut that presumption. *Hall*, 2009 U.S. Dist. LEXIS 24093, at *10 (rejecting typicality challenge where no evidence was adduced that put options were "inherently atypical").

Accordingly, Newvana should be appointed Lead Plaintiff and its motion granted.

---

[6] *Ark. Teacher Ret. Sys.*, 2016 WL 1298966, at *4 (at the lead plaintiff stage, movant need only make a prima facie showing of typicality and adequacy); *see also Aronson v. McKesson HOBC, Inc.*, 79 F. Supp. 2d 1146 at 1158, 1999 U.S. Dist. LEXIS 19276, Fed. Sec. L. Rep. (CCH) P90,694 (N.D. Cal. 1999) ("At the lead plaintiff selection stage, all that is required is a 'preliminary showing' that the lead plaintiff's claims are typical and adequate") (citation omitted).

## II.    PLYMOUTH IS NOT ENTITLED TO ANY DISCOVERY

The PSLRA is clear in stating that discovery of a lead plaintiff movant is only permitted if *the competing movant seeking discovery* "first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv).  This rare instance is unsupported by Plymouth's conjecture in the instant Action and discovery would be a waste of the parties' and the Court's resources.

Plymouth's argument that "[b]y not initially disclosing information surrounding its trading and business operations, Newvana is delaying the resolution of the lead plaintiff motions, thereby demonstrating its inadequacy to vigorously represent the interests of the Class" is entirely misplaced and calls for the application of a standard found nowhere within the PSLRA.  The lead plaintiff certification requirements prescribed by the statute are clear.  *See* 15 U.S.C. 15 U.S.C. § 78u-4(a)(2).  Nowhere in the six enumerated points does the PSLRA require any certification regarding a movant's "trading and business operations."  What is required is that a movant, *inter alia*, provide a sworn certification wherein plaintiff "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(2)(A)(iv).  Newvana has plainly done that here.  *See* Ex. B to Notice of Errata to Declaration of Shannon L. Hopkins, Esq. in Support of Newvana Ventures Limited's Motion (Dkt. Entry No. 28-2). Now, rather than accept the proffered evidence of Newvana as to its larger loss, Plymouth desires to conduct a fishing expedition in hopes of bolstering its claim for appointment without any reasonable basis for asserting its claims.  This argument must fail as it is based on speculation rather than "proof."  *See, e.g.*, *Ark. Teacher Ret. Sys.*, 2016 U.S. Dist. LEXIS 43501, at *19-20 (denying a competing movant's request for discovery related to a presumptive lead plaintiff group based on the "suspicious nature" of the class period applied in movants' certification); *Collier v. Moduslink Global Solutions, Inc. et al.*, No. 1:12-cv-11044-DJC (D. Mass.

Nov. 13, 2012) (ELECTRONIC ORDER) (appointing presumptive movant with the largest loss lead plaintiff in the litigation over a competing movant's claim of inadequacy and request for discovery); *Hodges v. Immersion Corp.*, No. C-09-4073 MMC, 2009 U.S. Dist. LEXIS 122565, at *12 (N.D. Cal. Dec. 21, 2009) ("As discussed, Muller has failed to make any showing with respect to whether Loos gained, rather than lost, as a result of the alleged fraud, nor has Muller made any showing with respect to whether Loos is a day trader, let alone the type of day trader who may be subject to a unique defense. Consequently, Muller has failed to demonstrate his entitlement to discovery."); *Ferrari v. Impath, Inc.*, No. 03-Civ.-5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *24 (S.D.N.Y. July 15, 2004) (denying discovery request where the movant seeking discovery "produced not one iota of evidence" in support of its theory that the presumptive lead plaintiff was inadequate); *In re Tronox, Inc.*, 262 F.R.D. 338, 347-48 (S.D.N.Y. 2009) (denying movant's request for discovery where requesting party failed to present "sufficient evidence to give rise to a reasonable basis on which to authorize discovery" and where "such discovery [would] only cause unnecessary delay and expense, likely to provide results that are neither helpful nor likely to change the outcome"); *In re Kit Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 448 (S.D.N.Y. 2013) (rejecting discovery request that provided "no proof or specific claims to rebut [movant's] adequacy"); *Reimer v. Ambac Fin. Grp., Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at *4 (S.D.N.Y. May 9, 2008) (allegations based on "conjecture" did not provide a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class) (citation omitted); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 09-md-02063-JLK-KMT, 2009 WL 4016635, at *5 (D. Colo. Nov. 18, 2009) (rejecting discovery request because "[a]llegations of impropriety are not proof of wrongdoing"); *Carson v. Clarent Corp.*, No. C 01-03361 CRB, 2001 WL 1782712, at *2 (N.D. Cal. Dec. 14, 2001) (denying request for leave

to take discovery "[a]s the other movants have not come forward with proof that rebuts the presumption"); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-CV-8925 (KMW), 2015 U.S. Dist. LEXIS 36409, at *24 n.5 (S.D.N.Y. Mar. 23, 2015) (denying a request for discovery where movant failed to rebut the presumption in favor of the movant with the largest loss).[7]

Because Newvana has the largest financial interest in this case, it is the presumptive most adequate plaintiff, which may only be rebutted upon "proof" of inadequacy.  15 U.S.C. § 78u-4(a)(3)(B)(II).  As no such proof exists, Plymouth's request for discovery should be denied and Newvana should be appointed Lead Plaintiff.[8]  *See Cendant,* 264 F.3d at 270 n.49 ("Courts must

---

[7] The two cases submitted by Plymouth in support of its request for discovery are entirely inapposite and should be disregarded by the Court.  First, in *Brown v. Biogen IDEC Inc.*, No. 1:05-cv-10400-WGY (D. Mass. July 26, 2005), the court ordered discovery to test the adequacy of the seven-member presumptive lead plaintiff group based on, *inter alia*, one member's proprietary relationship with the investment banker of the defendant corporation and that member's self-professed status as a "market maker."  *Id.* ("Encompassed within this issue are the three issues identified in footnote nine of London's further memorandum"); *see also Brown v. Biogen IDEC Inc.*, No. 1:05-cv-10400-WGY (D. Mass.), Mem. in Further Support of the Motion of the London Pensions Fund Authority and National Elevator Industry Pension Fund for Consolidation, Appointment as Lead Plaintiff and for Approval of Selection of Lead and Liaison Counsel and in Opposition to the Competing Motions, Dkt. Entry No. 34, at n.9.  Additionally, in *In re Michaels Stores, Inc. Sec. Litig.*, No. 3:03-cv-00246-M (N.D. Tex. July 10, 2003), the court ordered limited discovery where that presumptive lead plaintiff was a then-current employee of the defendant corporation with alleged access to internal, non-public information.  The facts of this matter are a far cry from the instant Action where Newvana is an unrelated public investor in Tetraphase.  Even still, prior to ordering discovery, the courts in each of these matters found that the requesting lead plaintiff movants provided a reasonable basis to question the adequacy of the presumptive lead plaintiff – a burden that Plymouth has failed to carry here.

[8] In a fleeting effort to inject himself into the Lead Plaintiff discussion despite having, by far, the least amount in financial loss of any of the competing movants, Handell proffers an alternative arrangement where he is appointed Co-Lead Plaintiff.  *See* Handell Opp. at 6-8.  This proposal was not discussed at the Rule 7.1 consultation between counsel for Newvana and Handell.  Nevertheless, the Court should reject the option as Newvana does not assent and Handell has not "shown that any marginal value he would add justify the cost and risks of his participation."  *Ark. Teacher Ret. Sys*, 2016 U.S. Dist. LEXIS 43501, at *18-*19; *see also Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 254 (S.D.N.Y. 2003) (denying a movant's request for appointment as co-lead counsel where the Court found that each movant had identical claims

also, however, take care to prevent the use of discovery to harass presumptive lead plaintiffs, something that the [PSLRA] was meant to guard against.").

## CONCLUSION

For the foregoing reasons, Newvana respectfully requests that the Court consolidate the Related Actions, appoint Newvana as Lead Plaintiff in the consolidated Action and approve Newvana's selection of Levi & Korsinsky as Lead Counsel.

Dated:  April 18, 2016                                    Respectfully submitted,

**LEVI & KORSINSKY LLP**

By: /s/*Shannon L. Hopkins*
    Shannon L. Hopkins (BBO# 657485)
    733 Summer Street, Suite 304
    Stamford, Connecticut 06901
    Tel. (203) 992-4523
    Fax: (212) 363-7500
    shopkins@zlk.com

    *Counsel for Lead Plaintiff Movant Newvana and*
    *Proposed Lead Counsel for the Class*

---

against the defendant and "[t]here [was] nothing to indicate that the overall quality of the action [would] be improved by having multiple Lead Plaintiffs.").

## CERTIFICATE OF SERVICE

      I, Shannon L. Hopkins, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicates as non-registered participants on April 18, 2016.

Dated:  April 18, 2016

                                          */s/Shannon L. Hopkins*
                                          Shannon L. Hopkins